(No. 66620.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHNNY BRYANT, Appellee.

*Opinion filed May 17, 1989.*

450

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Kenneth T. McCurry, Judy L. Groeneveld, Inge Fryklund and John R. Roe, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Anna

Ahronheim, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Defendant, Johnny Bryant, was charged by information in the circuit court of Cook County with one count of possession of a stolen motor vehicle in violation of section 4—103(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(a)(1)). Defendant waived a jury trial, and the circuit court found him guilty of possession of a stolen motor vehicle, a Class 2 felony (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(b)). The circuit court sentenced defendant to 3½ years in prison. Defendant appealed his conviction, claiming that section 4—103(b) of the Vehicle Code violates the due process and proportionate penalty clauses of the Illinois Constitution (Ill. Const. 1970, art. I, §§2, 11).

On appeal, the appellate court vacated defendant's conviction, finding section 4—103(b) of the Vehicle Code unconstitutional. (165 Ill. App. 3d 996.) The appellate court held that section 4—103(b) of the Vehicle Code violates the due process and proportionate penalties clauses of the Illinois Constitution: first, because the legislature intended to increase the penalty for possession of a stolen motor vehicle in order to deter organized motor vehicle theft, but instead created an unconstitutional statutory scheme which punishes possessors of stolen motor vehicles more severely than organized motor vehicle thieves (165 Ill. App. 3d at 1001, 1004); and, second, because possession of a stolen motor vehicle is a lesser included offense of theft and, thus, the lesser included offense is punished more severely than the greater offense. (165 Ill. App. 3d at 1002.) This court granted the State's petition for appeal as a matter of right (107 Ill. 2d R. 317).

There are three issues presented for review: (1) whether defendant waived the issue regarding the con-

stitutionality of section 4—103(b) of the Vehicle Code by failing to raise it in the circuit court; (2) if not, whether section 4—103(b) of the Vehicle Code is constitutional; and (3) whether defendant was denied effective assistance of counsel in the circuit court.

On September 26, 1985, at approximately 3:30 a.m., two officers of the Chicago police department watched as defendant and his companion, Williams, pushed a 1974 Yamaha motorcycle into a closed service station. The police officers pulled into the service station and stepped out of their squad car. Williams began to walk away saying, "I got nothing to do with this." The police officers stopped Williams and asked him who owned the motorcycle. Williams told them that friends had given him and defendant the motorcycle. When the police officers asked Williams why he and defendant were pushing the motorcycle, he told them that the motorcycle would not start because of mechanical difficulties. The police officers posed the same questions to defendant. Defendant told them that the motorcycle was his and that they had to push it because he lost the key.

The police officers checked the license plate and vehicle identification number (VIN) by means of mobile computer and learned that a Fred Miller owned the motorcycle. The police officers contacted Miller and he told them that he held title to a 1974 Yamaha motorcycle, VIN 3711285382. He also told the police officers that he did not give defendant or Williams permission to take, use or have possession of the motorcycle. Miller further stated that he was in the process of selling the motorcycle to a Richard Rice, who had possession of the motorcycle.

The police officers contacted Rice who told them that he was in the process of purchasing the motorcycle from Miller, but that he had not obtained title to the motorcycle. Rice further stated that he had possession of the motorcycle and had not given defendant or Williams

permission to take, use or have possession of the motorcycle.

After contacting both Miller and Rice, the police officers determined that the motorcycle had been stolen. The police officers then placed both defendant and Williams under arrest and advised them of their rights. Shortly after being advised of his rights, defendant told the police officers, "We saw it sitting there, so we took it."

Defendant, who was represented at trial by the public defender, was found guilty of possession of a stolen motor vehicle. Following the trial, defendant obtained private counsel and filed a motion for a new trial. One of the bases for defendant's motion was that he had been denied effective assistance of counsel at trial. Defendant argued that he and Williams were effectively under arrest when the police officer stopped Williams from walking away from the service station. Thus, defendant maintains that he was denied effective assistance of counsel at trial because the public defender failed to file motions to quash the arrest and to suppress statements including his admission to the police officers. The public defender explained that she made a strategic decision not to file motions to quash the arrest and to suppress statements, because defendant and Williams assured her that they did not make statements to the police officers. The circuit court denied defendant's motion for a new trial. Defendant appealed, the appellate court reversed and the instant appeal ensued.

The first issue presented for review is whether defendant waived the constitutional challenge to section 4—103(b) of the Vehicle Code by failing to raise it in the circuit court. Prior to 1973, this court followed the rule that the constitutionality of a statute is properly preserved for review only when it is raised in and addressed by the circuit court. (*People v. Amerman* (1971), 50 Ill. 2d 196, 197; *People v. Luckey* (1969), 42 Ill. 2d 115, 117.) However, in 1973, this court handed down its decision in

*People v. Frey,* which overruled both *Amerman* and *Luckey.* (*People v. Frey* (1973), 54 Ill. 2d 28, 29-33.) Now, a constitutional challenge to a statute can be raised at any time. (*People v. Zeisler* (1988), 125 Ill. 2d 42, 46; *People v. Sarelli* (1973), 55 Ill. 2d 169, 170-71.) Accordingly, defendant did not waive the issue regarding the constitutionality of section 4—103(b) of the Vehicle Code.

The second issue presented for review is whether section 4—103(b) of the Vehicle Code is constitutional. Section 4—103 of the Vehicle Code provides in part:

"Offenses relating to motor vehicles and other vehicles—felonies. (a) It is a violation of this Chapter for:

(1) A person not entitled to the possession of a vehicle or part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted; \*\*\*

\* \* \*

(b) Sentence. A person convicted of a violation of this Section shall be guilty of a Class 2 felony." Ill. Rev. Stat. 1985, ch. 95½, par. 4—103.

Defendant contends that the present classification violates the due process and proportionate penalties clauses of the Illinois Constitution because it makes possession of a stolen motor vehicle a Class 2 felony (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103(b)) punishable by three to seven years' imprisonment, while the greater offense of theft, as defined in section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 16—1), is a Class 3 felony (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(e)(3)) punishable by two to five years' imprisonment.

We must, first, address the appellate court's decision to look beyond the plain meaning of section 4—103 in determining that the legislature intended to increase the penalty for possession of a stolen motor vehicle in order to deter organized motor vehicle theft, but instead created an unconstitutional statutory scheme which punishes possessors of stolen motor vehicles more severely than organized motor vehicle thieves. "It is a primary

rule of statutory construction that the intention of the legislature should be ascertained and given effect." (*People v. Robinson* (1982), 89 Ill. 2d 469, 475.) When doing so, the language of the statute must be given its plain and ordinary meaning. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 479.) Thus, one must first look to the language of the statute itself, because the statutory language best indicates the drafters' intent. (*Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 200.) Where the intent can be ascertained from the statutory language it must be given effect without resorting to other aids for construction. (*People v. Haron* (1981), 85 Ill. 2d 261, 266-67.) Furthermore, "[t]here is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.

When these rules of statutory construction are taken into consideration, it is apparent that the appellate court erred in looking at the legislative debates to determine the intent of section 4–103 of the Vehicle Code. A reading of the plain language of section 4–103 of the Code makes it perfectly clear that the legislature intended to prohibit *all persons,* not just organized motor vehicle thieves, from possessing stolen motor vehicles. Thus, the appellate court erred in looking beyond the plain meaning of section 4–103 of the Vehicle Code and in concluding that the legislature intended to deter only organized motor vehicle thieves.

Next, we must address the appellate court's determination that the legislature created an unconstitutional statutory scheme which punishes possessors of stolen motor vehicles more severely than organized motor vehicle thieves. When the appellate court erroneously looked beyond the plain meaning of section 4–103 of the Vehicle Code and concluded that the legislature intended to deter only organized motor vehicle thieves, it made a distinction between possessors of stolen motor vehicles

and organized motor vehicle thieves. This distinction resulted in the appellate court's conclusion that organized motor vehicle thieves are punished *only* under section 16—1(e)(3) of the Criminal Code, which makes theft a Class 3 felony, while possessors of stolen motor vehicles are punished more severely under. section 4—103(b) of the Vehicle Code, which makes possession of a stolen motor vehicle a Class 2 felony.

As previously mentioned, section 4—103 applies to *all persons*, including organized motor vehicle thieves. Therefore, the appellate court erred in determining that possessors of stolen motor vehicles are punished more severely than organized motor vehicle thieves, because *all persons* who possess a stolen motor vehicle, including organized motor vehicle thieves, are punishable under section 4—103(b) of the Vehicle Code.

Next, we must address the appellate court's determination that possession of a stolen motor vehicle is a lesser included offense of theft and, thus, the lesser included offense is punished more severely than the greater offense in violation of the due process and proportionate penalty clauses of the Illinois Constitution (Ill. Const. 1970, art. I, §§2, 11). Despite the constitutional restraints on the legislature which are embodied in article I, sections 2 and 11, of the Illinois Constitution, courts are reluctant to invalidate penalty provisions which are enacted by the legislature. (*People v. Steppan* (1985), 105 Ill. 2d 310, 319.) In *Steppan*, this court explained:

> "[The legislature] has been empowered to declare and define conduct constituting a crime and to determine the nature and extent of punishment for it. [Citations.] The legislature, institutionally, is more aware than the courts of the evils confronting our society and, therefore, is more capable of gauging the seriousness of various offenses. Thus, *** the court has required only that the penalty prescribed for the particular crime be 'reasonably designed to remedy the evils which the legislature has de-

termined to be a threat to the public health, safety and general welfare.' " *Steppan*, 105 Ill. 2d at 319.

The history of the possession of a stolen motor vehicle penalty provision indicates that, in 1977, possession of a stolen motor vehicle was a Class 4 felony. (Ill. Rev. Stat. 1977, ch. 95½, par. 4—108(b).) In 1979, the statute was amended and a first-time conviction for possession of a stolen motor vehicle was a Class 4 felony, while subsequent convictions were Class 3 felonies. (Ill. Rev. Stat. 1979, ch. 95½, par. 4—103(b).) In 1983, the statute was again amended and a first-time conviction for possession of a stolen motor vehicle became a Class 3 felony, while subsequent convictions became Class 2 felonies. (Ill. Rev. Stat. 1983, ch. 95½, par. 4—103(b).) Finally, on January 1, 1985, the present form of section 4—103(b) of the Vehicle Code became effective, making possession of a stolen motor vehicle a Class 2 felony regardless of whether it is the first or a subsequent conviction.

Under previous statutory schemes, possession of a stolen motor vehicle may have been considered a lesser included offense of theft. (See *People v. Cramer* (1980), 81 Ill. App. 3d 525, *rev'd on other grounds* (1981), 85 Ill. 2d 92; *People v. Lindsey* (1979), 69 Ill. App. 3d 493.) However, any previous lesser included offense rule is not applicable to the current statutory scheme for possession of a stolen motor vehicle. The steady increase in the penalty provision for possession of a stolen motor vehicle is indicative of the legislature's intent to make possession of a stolen motor vehicle a separate, more serious offense than theft, rather than a lesser included offense of theft. See *People v. Ambrose* (1988), 171 Ill. App. 3d 87; *People v. Carlyle* (1987), 159 Ill. App. 3d 964; *People v. Smith* (1987), 159 Ill. App. 3d 156; *People v. Larson* (1987), 158 Ill. App. 3d 135.

We believe that the legislature's decision to steadily increase the penalty for possession of a stolen motor vehicle was designed to distinguish possession of a stolen motor vehicle from theft in order to remedy the increas-

ing frequency of the offense of possession of a stolen motor vehicle and its related activities. Therefore, we hold that section 4—103(b) of the Vehicle Code is reasonably designed to protect the public from the evils of the offense of possession of a stolen motor vehicle and its related activities. As such, section 4—103(b) of the Vehicle Code does not violate sections 2 and 11 of article I of the Illinois Constitution.

The final issue presented for review is whether defendant was denied effective assistance of counsel in the circuit court. The seminal case in determining whether a defendant has been denied the effective assistance of counsel is *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. In *Strickland*, the United States Supreme Court established a two-prong test for determining if a defendant has been denied the effective assistance of counsel: first, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064); and, second, the defendant must show that there is a reasonable probability that the outcome of the trial would have been different, but for counsel's ineffective representation (*Strickland*, 466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067).

Defendant contends that the public defender's representation of him fell below the objective standards of reasonableness, because she failed to read the police report and, as a consequence, failed to file motions to quash the arrest and to suppress statements such as defendant's admission. An attorney's decision to file or not to file a motion is regarded as a matter of trial strategy (*People v. Green* (1967), 36 Ill. 2d 349, 351) which must be given great deference (*Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066). When counsel is planning trial strategy, judgments must be made and any errors in judgment do not constitute inef-

fective assistance of counsel. *People v. Stewart* (1984), 104 Ill. 2d 463, 492.

In the present case, the public defender explained that her decision not to file motions to quash the arrests and to suppress statements was a strategic decision based on conversations she had with defendant and Williams where they assured her that they did not make statements to the police officers. The police report indicates that these assurances were dishonest. However, it was not ineffective representation for the public defender to rely on a defendant's assurances, rather than the police report, in planning her trial strategy. It is axiomatic that a criminal defendant cannot state a falsehood to his attorney and later claim that his attorney's reliance on the falsehood resulted in ineffective assistance of counsel. As such, we believe that the public defender's representation of defendant did not fall below an objective standard of reasonableness. As we have determined that the public defender provided defendant with effective representation, we do not need to address the second prong of the *Strickland* test.

For the reasons stated above, we reverse the decision of the appellate court and affirm the decision of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*